**UNITED STATES of America,**

v.

**Diana G. NELSON, Movant.**

**Civil Action Nos. 89–20081–04 (97–3016–EEO).**

United States District Court,
D. Kansas.

May 2, 1997.

Carl E. Cornwell, Cornwell & Edmonds, Overland Park, KS, for Diana G. Nelson.

Leon J. Patton, Office of U.S. Atty., Kansas City, KS, for U.S.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. # 439). Having reviewed all materials filed, together with pertinent portions of the record, the court makes the following findings and order.

### Factual Background

Defendant was found guilty by a jury of the following offenses: Count I, conspiracy to possess with intent to distribute crack cocaine, in violation of 21 U.S.C. § 846; Count IV, distribution of crack cocaine within 1,000 feet of a public elementary school in violation of 21 U.S.C. § 845a(a) and 18 U.S.C. § 2; Count V, possession with intent to distribute crack cocaine within 1,000 feet of a public elementary school in violation of 21 U.S.C. § 845a(a) and 18 U.S.C. § 2; and Count XIII, distribution of crack cocaine within 1,000 feet of a public elementary school, in violation of 21 U.S.C. § 845a(a) and 18 U.S.C. § 2.

Defendant's conviction was affirmed in all respects on direct appeal, *see United States v. Nelson,* 941 F.2d 1213 (10th Cir.1991), *cert. denied,* 502 U.S. 1044, 112 S.Ct. 902, 116 L.Ed.2d 803 (1992). Defendant now seeks to challenge her sentence by this motion brought under 28 U.S.C. § 2255. Defendant alleges that her attorney, Carl Cornwell, was ineffective (1) in various aspects of pretrial preparation, at trial, and at sentencing; (2) for failing to inform the court that she was

unable to assist in the preparation of her defense; (3) for failing to challenge the characterization of Northwest School as a public elementary school; and (4) for failing to challenge the drug quantity and base offense level at sentencing.

## Discussion

■ In reviewing a section 2255 petition, we presume the proceedings leading to the conviction were correct. *Klein v. United States,* 880 F.2d 250, 253 (10th Cir.1989). To obtain relief, defendant must show a "complete miscarriage of justice." *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 2305, 41 L.Ed.2d 109 (1974).

The Tenth Circuit has recently reiterated the standards courts must employ in reviewing an ineffective assistance of counsel claim:

> The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversarial process. The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect.

*Williamson v. Ward,* 110 F.3d 1508, 1513–14 (10th Cir.1997) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986) (citation omitted)). Evaluating the effectiveness of counsel's assistance requires a two-part inquiry. *Id.* "In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* (quoting *Kimmelman,* 477 U.S. at 375, 106 S.Ct. at 2583 (citing *Strickland,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984))). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Furthermore, because there exists a strong presumption that counsel's performance falls within the wide range of professional assistance,

the defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.

*Id.* (quoting *Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586 (internal quotations omitted) (citing *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2065)).

I. *Defendant's claim that her counsel was ineffective in various aspects of pretrial preparation, at trial, and at sentencing.*

A. *Grand Jury Testimony.*

■ Defendant argues that her counsel, Carl Cornwell, failed to advise her of certain rights prior to her testifying before a grand jury. She claims that he did not advise her that she had the right to have her attorney outside the grand jury room, that she could consult with her attorney before answering any questions, or that she could exercise her right against self-incrimination. Apparently she contends that had Mr. Cornwell advised her of these rights, she would not have lied to the grand jury and thus would not have received an obstruction of justice enhancement at sentencing.

In response, the government has submitted the affidavit of Mr. Cornwell. Mr. Cornwell's affidavit flatly contradicts defendant's contentions by setting forth specifically how he advised her. Mr. Cornwell, in his affidavit, states: "After Diana Nelson was subpoenaed to testify before the grand jury, I told her she had to honor the subpoena, that she should tell the truth, and should not answer anything which would tend to incriminate her."

Moreover, even if Mr. Cornwell had told her nothing, the record reveals that defendant was duly advised before her grand jury testimony as to each of the rights she claims Mr. Cornwell failed to advise her of. The transcript of the grand jury proceeding indicates that when she appeared before the grand jury, defendant was informed about

the nature of the grand jury investigation; that she could refuse to answer any question if a truthful answer would tend to incriminate her; that anything she said could be used against her by the grand jury or in a subsequent legal proceeding; and that she would be given a reasonable opportunity to step outside the grand jury room to consult with counsel, if she so desired.

Based on the foregoing, the court concludes that counsel's performance was not deficient, nor was it so prejudicial that there exists "a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *Williamson*, 110 F.3d 1508, 1514 (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

### B. *Severance.*

■ Defendant next complains that Mr. Cornwell was ineffective in failing to file a motion for severance. Defendant, however, does not provide any legal or factual basis under which she would have been entitled to a severance. Her contention is vague and conclusory at best. Mr. Cornwell explains in his affidavit the reason he did not file a severance motion: "I did not move for severance, since I am familiar with Tenth Circuit case law on obtaining severance in a conspiracy case and knew that (as shown by the denial of the codefendant's severance motions) it would not be granted." The court finds that defendant has simply not established that her defense counsel's failure to move for severance was either deficient or prejudicial.

### C. *Duress/Battered Woman Syndrome.*

Defendant next contends that her counsel was ineffective for not pursuing a duress defense, and for not having defendant evaluated for Battered Woman Syndrome (BWS). With respect to any duress defense, the court notes that at trial, the court allowed admission of evidence that defendant participated in the drug conspiracy under duress. *United States v. Nelson*, 941 F.2d 1213, 1991 WL 163061, *4 (10th Cir.1991). In addition, the trial judge gave a duress instruction, over the government's objection. *Id.* Defendant's

conclusory allegations that her counsel did not pursue a duress defense is belied by the record.

■ As to defendant's argument that her counsel was ineffective for failing to investigate and present evidence of BWS, defendant relies on two California cases, *People v. Day*, 2 Cal.App.4th 405, 2 Cal.Rptr.2d 916 (1992), and *People v. Romero*, 13 Cal.Rptr.2d 332 (1992). Both cases are distinguishable. In *People v. Day*, the trial counsel admitted, both in court and in letters filed with the court, that he was unaware of the existence of BWS before and during trial and never considered investigation, research, or presentation of expert witness testimony regarding BWS on defendant's behalf. *People v. Day*, 2 Cal.App.4th at 412, 2 Cal.Rptr.2d at 920. In *People v. Romero*, the trial counsel obtained the name of a BWS expert, but when he was unable to reach the expert before trial, counsel "simply dropped the ball" and did not pursue further an evaluation of defendant for BWS. *People v. Romero*, 13 Cal. Rptr.2d at 339. The court held that trial counsel's repeated failure to provide the court with a declaration explaining his conduct permitted the court to presume the absence of a satisfactory explanation. *Id.*

Neither of these factual scenarios is present in the instant case. In contrast, Mr. Cornwell has provided an affidavit to the court, in which he states that he explored whether expert testimony of BWS would be appropriate for Diana Nelson. Mr. Cornwell avers that he was well aware of BWS, because several years before his representation of defendant, he had successfully argued the applicability of expert testimony regarding BWS to the Kansas Supreme Court in *State v. Hodges*, 239 Kan. 63, 716 P.2d 563 (1986). Mr. Cornwell's affidavit states:

> Because *Hodges* was the first Kansas case explicitly holding that testimony on BWS should have been permitted, I was thoroughly familiar with BWS. We talked about whether she [Diana] was under some duress and whether she was forced to participate in this activity. I thought Daniel Nelson had some influence over her, but determined testimony concerning BWS was not appropriate and felt there was not

reasonable basis to have her evaluated. I was able to present enough of a defense through various witnesses called by others to obtain a coercion instruction from the court.

The court finds Mr. Cornwell's affidavit statements to be credible. Defendant has not overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83, (1955)); *U.S. v. Taylor,* 832 F.2d 1187, 1194 (10th Cir.1987).

Defendant has simply not established that counsel's failure to pursue a BWS defense was deficient or prejudicial. There is no evidence that an attorney rendering reasonably effective assistance would have deemed the use of BWS essential to the defense of the case. In addition, the court concludes, after a careful review of the record, that the evidence against defendant was so overwhelming that no reasonable probability exists that the result of the proceeding would have been different had counsel pursued a trial strategy incorporating BWS.

### D. *Interviews of Potential Witnesses.*

■ Defendant next complains that counsel failed to interview witnesses or call them in her defense. Defendant neither identifies any specific witnesses, nor states the purported substance of their testimony. Mr. Cornwell's affidavit states that he does not recall defendant suggesting any witnesses for him to interview or to call to testify. Defendant has wholly failed to allege any particulars in regard to this issue. A defendant may not prevail on a claim of ineffective assistance based only on conclusory allegations of ineffective performance. *See Eskridge v. United States,* 443 F.2d 440, 443 (10th Cir.1971).

### E. *Consequences of Trial.*

Defendant alleges that her counsel was ineffective for not fully explaining the "extreme consequences of going to trial." Defendant's Motion at 9. This allegation is directly controverted by Mr. Cornwell's affidavit, wherein Mr. Cornwell avers:

I recommended to her [defendant] that she enter into a plea agreement. We had extensive plea negotiations before trial, which ultimately proved unsuccessful. I told her she should not go [to] trial, and that she would lose and get life imprisonment if she did.

Defendant has presented no affidavit or other evidence to the contrary, but instead only her bald assertions that her counsel did not so advise her. Defendant has failed to meet her burden to demonstrate that her defense counsel's performance in this regard was deficient.

II. *Defendant's claim that counsel was ineffective for not advising the court that defendant was unable to assist in the preparation of her defense.*

■ Defendant next claims that she so suffered from BWS that she was unable to assist her attorney in her defense, and that her counsel was ineffective in not informing the court of this fact. As discussed above, Mr. Cornwell stated through affidavit that he believed defendant's husband "had some influence over her," but determined, based on his familiarity with BWS, that any testimony regarding BWS would be inappropriate, and that there was no reasonable basis to have plaintiff evaluated for BWS. We have already found defendant has not established that counsel's failure to evaluate plaintiff for BWS was deficient or prejudicial, *see supra* at 7. Likewise, defendant has not established that counsel's failure to advise the court that plaintiff was unable to assist in her defense because of BWS was deficient or prejudicial.

Defendant relies upon *McMaugh v. State,* 612 A.2d 725 (R.I.1992), for the proposition that a woman suffering from BWS can be under such extreme duress that she is unable to assist her counsel in her defense. *McMaugh* did not involve a claim of ineffective assistance of counsel. In *McMaugh,* the defendant sought postconviction relief based on newly-discovered evidence of BWS. Defendant claimed the trial judge erred in ignoring uncontroverted expert witness testimony, presented at a postconviction hearing,

that the husband's domination over defendant prevented her from assisting her trial counsel in her defense. At the postconviction hearing, three BWS experts, including one expert hired by the state, testified that defendant at the time of trial was unable to assist her attorney in her defense because she suffered from BWS. The appellate court sustained the motion for postconviction relief on the grounds the trial court erred in ignoring the uncontroverted evidence that BWS prevented defendant from assisting her attorney. Here, however, plaintiff has presented no evidence that she suffered from BWS. Mere conclusory allegations and assertions of ineffective performance are insufficient for plaintiff to prevail on a claim of ineffective assistance. *See Eskridge,* 443 F.2d at 443.

III. *Defendant's claim that counsel was ineffective for failing to investigate and challenge the designation of Northwest School as a public elementary school under 21 U.S.C. § 860(a).*

Defendant next argues that counsel was ineffective for not investigating and offering evidence that Northwest School was a day care and pre-school center, rather than a public elementary school. Defendant asserts that Northwest should not have qualified as a public elementary school under 21 U.S.C. § 860. Defendant has presented no evidence that she suggested to Mr. Cornwell at the time of trial or sentencing that she disagreed with the government's characterization of the school. Nor does she present any evidence that Northwest was not a public elementary school.

Indeed, there was ample evidence presented at trial that Northwest was a public elementary school at the time defendant committed the offenses for which she was prosecuted and convicted. Bonner Springs police sergeant Jonathon L. Kelly testified that Northwest was a public grade school for children in kindergarten. A county land surveyor testified that the property records showed the tract was owned by the Bonner Springs school district. Codefendant Burlon Davis testified that Northwest was one of the elementary schools which he had attended. Codefendant Daniel Nelson testified

that Northwest was a public elementary school for Head Start and kindergarten students.

■ Mr. Cornwell states in his affidavit that he does not remember any information to suggest that Northwest School was not an elementary school. He further states that if defendant, who lived in the neighborhood of the school, had told him that Northwest was not an elementary school, he would have looked into the matter further. Defendant's bare allegation is insufficient to overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

IV. *Defendant's claim that counsel was ineffective for failing to challenge the drug quantity and base offense level at sentencing.*

Defendant asserts that her counsel was ineffective for not challenging the amount of drugs that were reasonably foreseeable to defendant, and for not challenging the base offense level attributed to the defendant. In his affidavit, Mr. Cornwell avers that he did challenge the base offense level:

At sentencing, I argued against the calculations of amounts of cocaine base used to determine the base offense level, as well as against an enhancement for role in the offense. I was partially successful in limiting the enhancement for her role as a manager or supervisor, but the court ruled against us in determining the quantity of drugs. Even after reading her 2255 motion, I do not know how I could have done anything else to show that the conduct of her co-conspirators was not reasonably foreseeable to her.

Mr. Cornwell's representations are borne out by the transcript of the sentencing hearing. At defendant's sentencing hearing, Mr. Cornwell stated:

Judge, the first thing I'd like to argue is the amount of cocaine. It's at level 36 right now, and in my opinion, it ought to be at level 32, which is 50 to 149 grams. That amount ... is that amount which I think the Government can conclusively show was had at the residence in question.

Transcript of Sentencing Hearing, Doc. # 335, at 84. Mr. Cornwell's affidavit and the transcript of sentencing thus contradict defendant's assertion that her attorney failed to challenge the amount of drugs considered in computing the base offense level.

The court, in a sentencing memorandum filed after the sentencing hearing, summarized the evidence presented in support of a three-level enhancement for her role as a manager or supervisor in the drug operation. The court specifically recounted the following evidence:

> [T]his defendant and her husband controlled the sale and distribution of cocaine base. Witnesses testified that Diana Nelson supervised the sale of cocaine base in Bonner Springs when her husband was in Coffeyville. In the absence of her husband, Diana Nelson's approval was required before other participants could sell the drugs or exchange them for an item.
>
> A witness testified that on one occasion Diana directed two individuals to a laundry cup of cocaine base "stashed" on the roof on one of the Nelsons' Bonner Springs residences.... Testimony also revealed that Diana brought large pieces of crack to her residence and "cut the crack into rocks" weighing approximately 0.2 grams each, the weight of the "rocks" typically sold at the retail level. She also counted the money that sellers returned after dealing the drugs. In addition, the government presented evidence that this defendant used money from the final paycheck she received at a nursing home to purchase the cocaine base that started the cocaine trafficking operation. These facts clearly indicate that Diana Nelson directed and supervised subordinates who participated in the conspiracy.

Sentencing Memorandum, Doc. # 315, at 24–25. The court finds that such evidence also illustrates her knowledge of the over-all scope of the conspiracy, and that the entirety of the drug trafficking was reasonably foreseeable.

Defendant also seems to argue that her counsel should have attacked the base offense level and the court's finding that the trafficking was reasonably foreseeable, on the grounds that she acted under duress. The record reflects that Mr. Cornwell did successfully argue for a downward departure from the presumptive guideline range, on the basis that defendant's conduct was the result of coercion by her husband, codefendant Daniel Nelson. The court, in its Sentencing Memorandum, stated:

> Defense counsel for Diana Nelson pleads that his client was under "the spell and influence" of her husband. He adds that there is no other explanation for her actions except the "power being wielded by" William Nelson, Sr. The court is satisfied that defense counsel elicited enough testimony at trial, through cross examination of other witnesses, to prove by a preponderance of the evidence that Diana Nelson was coerced and subjected to duress by her husband's threats of physical injury.
>
> The court finds that the Sentencing Commission did not take into consideration serious coercion and duress, and therefore instead of a three-level enhancement for Diana's role, the court is assessing only a two-level enhancement for her role in the offense.

Sentencing Memorandum, Doc. # 315, at 27–28. Thus, the court's willingness to assess only a two-level enhancement (which allowed the court to sentence defendant to 360 months, instead of the life sentence required if a three-level enhancement were imposed) is directly attributable to her counsel's ability to persuade the court as to the applicability of the duress argument.

Defendant has once again failed to show that her counsel committed errors, or that her counsel's performance was so prejudicial that there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. *Williamson,* 110 F.3d 1508, 1513–14.

Finally, the court observes that defendant was represented by Mr. Carl Cornwell, a highly competent and experienced member of the criminal defense bar in this district. He is thoroughly conversant in the law and the federal sentencing guidelines. The court has reviewed all relevant portions of the record in this case. There was substantial evidence

of defendant's guilt. Considering all the circumstances, the court finds that Mr. Cornwell's representation was well within the range of reasonable professional assistance required by the Constitution. In the present motion, defendant has apparently attempted to measure counsel's performance in hindsight. Even so, with respect to each issue raised, defendant has completely failed to demonstrate that Mr. Cornwell's conduct fell below an objective standard of reasonableness given prevailing professional norms. *Id.* (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065). Nor has she met her burden of showing that the decision reached would reasonably likely have been different absent the alleged errors. *Id.* (citing *Strickland,* 466 U.S. at 696, 104 S.Ct. at 2069).

The court concludes that, for all the reasons discussed, the files and records in this case conclusively show that defendant is entitled to no relief. Therefore, an evidentiary hearing is not necessary. No hearing is required in a section 2255 proceeding if the factual matters raised by the motion may be resolved on the record before the district court. *See United States v. Marr,* 856 F.2d 1471, 1472 (10th Cir.1988).

IT IS THEREFORE ORDERED that defendant's motion to vacate, set aside, or correct her sentence (Doc. # 439) is denied. The clerk is directed to forward a copy of this order to defendant, Mr. Cornwell, her trial counsel, and the office of the United States Attorney.